UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Melissa's Trust, Michelle Precin Trustee, individually and derivatively on behalf of UMIC-Upstate Associates-78 L.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 02068 |
| v. | ) ) ) | Judge Thomas M. Durkin |
| Gil Seton Jr., individually, UMIC GP LLC, a California Limited Liability Co., SP Investment Fund, LLC, a California Limited Liability Co., UMIC Merger LLC, a Delaware limited liability Co., and UMIC-Upstate Associates-78, L.P., a Delaware Limited Partnership, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Melissa's Trust, Michelle Precin Trustee, individually and derivatively on behalf of UMIC-Upstate Associates-78, L.P. ("Plaintiff") filed a seven-count complaint against Gil Seton, Jr. ("Seton") individually, UMIC GP LLC ("UMIC GP"), a California limited liability Company, SP Investment Fund LLC ("SPIF"), a California limited liability Company, UMIC Merger LLC, a Delaware limited liability Company, and UMIC-Upstate Associates-78, L.P. (the "Partnership"), a Delaware limited partnership (collectively, "Defendants") for a declaratory judgment, rescission of a December 9, 2013 merger, a full accounting of amounts owed to the Partnership, common law fraud, breach of fiduciary duty, violation of

consumer fraud and deceptive practices acts, and breach of contract and the covenants of good faith and fair dealing. R. 1. Before the Court is Defendants' motion to transfer this case to the United States District Court for the District of Delaware. *See* 28 U.S.C. § 1404(a). For the following reasons, the motion is granted.

## Background[1]

The Original Partnership Agreement corresponding to the formation of the Partnership[2] was executed on September 15, 1978 (the "Original Partnership Agreement"). R. 1-1 at 1, Exh. A. The Original Partnership Agreement was formed under the laws of the state of Tennessee and was to be "construed and enforced in accordance with the laws of the State of Tennessee." R. 1-3 at 9 § 14.02; R. 1-1 at 3 § 1.01. The Original Partnership Agreement set out the terms of the relationships among the general and limited partners and the procedures to amend the Original Partnership Agreement. The Original Partnership Agreement was made between UMIC Properties, Inc. (Administrative General Partner and initial limited partner) and Kevin Kelly (Individual General Partner), and all other "persons, partnerships, corporations, trusts or other entities who or which shall execute a Subscription Agreement and thereby agree to contribute to the capital of the Partnership and agree to be bound by the provisions of this Agreement, . . ." R. 1-1 at 2.

---

[1] The Court recites the procedural background necessary to decide the instant motion. In the interest of brevity, the background is limited to discussion of those facts relevant to the resolution of the instant motion.

[2] In their briefs, the parties have referred to the initial partnership, formed under the laws of Tennessee, as UMIC Tennessee, and the partnership with which it merged on July 18, 2013, as UMIC Delaware. For clarity, the Court will refer to both entities as the "Partnership" throughout.

The Partnership was formed to invest in three limited partnerships: SNS Development Company, SNL Development Company, and United Housing Partners-Bowling Green (the "Local Partnerships"). R. 1-1 at 2. These local partnerships were organized to own and operate multi-family residential housing projects for elderly persons of low and moderate income in Saratoga Springs and Ilion, New York; and Bowling Green, Kentucky. *Id.* Soon after the formation of the Partnership, the General Partners sold thirty-two (32) limited partnership interests for cash and promissory notes:



R. 1 at 3-4 ¶¶ 4-5.

By August 2010, SPIF acquired nineteen (19) limited partners interests, more than 59% of the limited partnership interests, making SPIF a majority holder of the limited partnership interests:



**August 2010**

R. 1 at 10 ¶ 10.

On March 24, 2011, UMIC GP was added as a co-Administrative General Partner of the Partnership. R. 19-2 at 2, Exh. A:



| March 2011 |
| --- |

R. 19-2 at 8, Exh. B. TESCO Properties, Inc. (formerly UMIC Properties, Inc.) the sole general partner and Administrative General Partner in the Partnership prior to UMIC GP's admission, consented in writing to the amendment as did SPIF, the holder of the majority of limited partnership interests of the Partnership. [3]

Plaintiff is an Illinois Trust (the "Trust") formed on or about July 26, 2011 on the death of Margaret A. Paluch. Paluch's daughter, Michelle Precin, is trustee of Melissa's Trust. Precin is Melissa's mother. When the Trust was formed, two of the 32 limited partnership interests in the Partnership were assigned to Plaintiff, which Plaintiff held during the transactions at issue in the complaint. R. 1 at 21-22 ¶¶ 47-49.

On March 26, 2012, the Original Partnership Agreement was amended to include, among other provisions, an exclusive jurisdiction clause for the state or federal court of New York "for . . . any judicial proceeding . . . in connection with . . . th[e] Agreement." R 19-3 at 1-13, Exhs. D-E. The amendments were filed with the Tennessee Secretary of State on April 27, 2012. *Id.*

On or about October 19, 2012, TESCO sold its interest as a general partner to UMIC GP, making UMIC GP the sole administrative general partner of the Partnership.

---

[3] Neither party explains the subsequent status (or absence) of Kevin Kelly as a general partner. However, neither party disputes that UMIC GP was the sole General Partner of the Partnership at the time of the July 2013 Merger. R. 1 at 10 ¶ 14; R. 1 at 12 ¶ 21; R. 19 at 3-4.



R. 19-3 at 14, Exh. F; R. 1 at 10 ¶ 14. On July 18, 2013, UMIC GP, the sole administrative general partner, and SPIF, owner of over 50% of the limited partnership units, approved an agreement and Plan of Merger permitting transfer of domicile of the Partnership from Tennessee to Delaware (the "Merger"). R. 1 at 12 ¶ 21; R. 19-5 at 59, Exh. C. The Merger was accompanied by the written consent and approval of UMIC GP and SPIF. R. 19-5 at 5, Exh. B. Certificates of the Merger were filed with the states of Delaware and Tennessee, and notice of it was mailed to each of the limited partners, which included Plaintiff. R. 19-6 at 1-7, Exh. D; *id.* at 69-71, Exh. G; R. 19-3 at 20, Exh. G. The Plaintiff was not asked to vote on the Merger nor did it give its consent. R. 22 at 1, 7.

Section 211 of the Tennessee Revised Uniform Limited Partnership Act ("TRULPA") sets forth the requirements for the approval of a merger concerning a

Tennessee limited partnership. *See* Tenn. Code Ann. § 61-2-211. A merger under the TRULPA requires approval by only a majority of the limited partners:

> Unless otherwise provided in the partnership agreement, a merger shall be approved by each domestic limited partnership which is to merge: (A) By all general partners; and (B) . . . by limited partners who own more than fifty percent (50%) of the then current percentage or other interest in the profits of the domestic limited partnership.

Tenn. Code Ann. § 61-2-211.

A revised partnership agreement came into force on July 23, 2013 as a result of the Merger (the "Revised Partnership Agreement"). R. 19-6 at 37, Exh. B. The Revised Partnership Agreement contained the following revised forum selection clause:

> The Partnership and each Partner irrevocably (1) submits to the exclusive jurisdiction of the courts of the State of Delaware (and the Federal courts located in the State of Delaware) for purposes of any judicial proceeding that may be instituted in connection with any matter arising under or relating to this Agreement, (2) waives any objection that such party may have at any time to the laying of venue of any action or proceeding brought in any such court, (3) waives any claim that such action or proceeding has been brought in an inconvenient forum, (4) agrees that service of process or of any other papers upon such party by registered mail at the address to which notices are to be sent to such party pursuant to this Agreement shall be deemed good, proper and effective service upon such party, provided that this clause ( 4) shall not affect the right to effect service of process in any other manner permitted by the laws of the State of New York, and *(5) agrees not to bring action with respect to the Partnership or this Partnership Agreement except in the courts of the State of Delaware (and the Federal courts located in the State of Delaware).*

R. 19-6 at 66 (emphasis added).

After receipt of the notice of the Merger, Plaintiff's representative, John Marshall, requested and received a copy of the Revised Partnership Agreement which included the revised forum selection clause. R. 19-3 at 21-25, Exhs. H, I.

On March 24, 2014, Plaintiff filed its complaint for declaratory judgment, damages, and injunctive relief. R. 1. Plaintiff asserts that Defendant Seton, manager of UMIC GP and SPIF, engaged in a scheme to take control of the Partnership property and assets for his personal benefit to the detriment of the Partnership and its limited partners beginning in July 2003. R. 1 at 3 ¶ 2.

On April 9, 2014, Plaintiff moved for a temporary restraining order, an asset restraining order, removal of the general partner, and an expedited discovery order. R. 8. At the status hearing on April 23, Defendants raised the issue of transfer in light of the forum selection clause. On May 7, Defendants moved to transfer the case, pursuant to 28 U.S.C. 1404(a), R. 19, and briefing followed.

For the following reasons, Defendants' motion to transfer is granted.

## Analysis

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This framework requires a district court to consider convenience and fairness on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988); *Miller v. SKF USA, Inc.*, No. 10 C 6191, 2010 WL 5463809 (N.D. Ill. Dec. 29, 2010). The statute does not require the

evaluation of a narrow or rigid set of considerations, but instead vests discretion in district courts to consider "all factors relevant to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). District courts have broad discretion to grant or deny a motion to transfer under § 1404(a). *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citations omitted). The movant bears the burden of demonstrating that a transfer is appropriate. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir. 1986). *Miller*, 2010 WL 5463809, at *2.

I. Validity of the Forum–Selection Clause

When a party seeks transfer under 28 U.S.C. § 1404(a) pursuant to a forum-selection clause, federal law governs the question of the clause's validity. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.,* 437 F.3d 606, 608 (7th Cir. 2006); *see also Bertelsen v. Monsanto Co.*, No. 4:12-CV-04077-SLD-JEH, 2014 WL 1213474, at *1-2 (C.D. Ill. Mar. 24, 2014).[4] "[F]ederal courts are friendly to the use of forum selection clauses to determine which federal district court shall host a case." *Aliano Bros.*, 437 F.3d at 608. The existence of a forum-selection clause is a significant

---

[4] Plaintiff asserts that under *IFC Credit Corp v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d 989, 991 (7th Cir. 2008), state law governs the dispute. However, as Defendants seek to transfer to the federal district court in Delaware, it is governed by federal law. *See Aliano Bros.*, 437 F.3d at 608, 613 (noting, where defendant moved to dismiss for lack of personal jurisdiction, that had "the district judge been asked to transfer the case to the federal district court in New Jersey, where [the plaintiff] could obtain personal jurisdiction over [the defendant] without having to rely on the forum selection clause, the validity of the clause would plainly be governed by federal law" and that if the defendant moved for transfer under 1404(a), "there w[ould] be no shadow of a doubt that the federal standard applies.")

.

factor that "figures centrally in the district court's calculus of whether to transfer a case." *Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 774-75 (N.D. Ill. 2000) (citing *Stewart Org., Inc.*, 487 U.S. at 29). Such clauses are presumed valid and enforceable unless the resisting party can show that:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) its enforcement would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.,* 250 F.3d 510, 525 (7th Cir. 2001) (internal citations and quotations omitted). Such clauses are enforced even when parties allege that the contract containing the clause is void or unenforceable. *Miglin v. Mellon*, No. 07 C 6863, 2008 WL 2787474, at *1 (N.D. Ill. July 17, 2008) (citing *Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759, 762 (7th Cir. 2006)).

### A. July 2013 Merger

Defendants argue that the forum selection clause in the Revised Partnership Agreement is valid and enforceable because the Merger preceding the Revised Partnership Agreement was valid. R. 19. Plaintiff claims that the Merger was invalid because Defendants failed to obtain the proper consent to conduct the Merger. R. 22.

According to its terms, the Original Partnership Agreement is governed by Tennessee law. R. 1-3 at 9, § 14.02. Under Tennessee law, when interpreting the terms of a contract, a court should give them their "plain and ordinary meaning."

*Certain Underwriters at Lloyd's of London v. Paniagua*, 957 F. Supp. 2d 921, 924 (W.D. Tenn. 2013) (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.,* 277 S.W.3d 381, 386 (Tenn. 2009)).

Plaintiff claims that the Merger "involved" the sale of all the assets of the Partnership, triggering Sections 12.02 and 13.01(b) of the Original Partnership Agreement and requiring consent of all limited partners, which was not obtained. R. 22 at 10-12. A plain reading of the Original Partnership Agreement provisions, however, does not support Plaintiff's argument.

Section 12.02 of the Original Partnership Agreement, cited by Plaintiff and discussing the "limitations on amendments," states that:

> Notwithstanding the provisions of Section 12.01, no amendment to this Agreement may: . . . (e) amend this Article XII,[5] or Section 13.01, *without the Consent of all Partners.*

R. 1-3 at 7 (emphasis added).

Neither the Merger or a "sale of assets" is an "amendment" to Article XII or Section 13.01. Section 13.01(b) of the Original Partnership Agreement, cited by Plaintiff, states:

> 13.01. <u>Dissolution of the Partnership</u>.  The partnership shall be dissolved on the earlier of the expiration of the term of the Partnership or upon: . . . (b) the sale or other disposition of all or substantially all of the Partnership assets;

---

[5] Article XII is the entire "Amendments" section of the Original Partnership Agreement, including § 12.01—Proposal and Adoption of Amendments Generally; § 12.02—Limitations on Amendments; and § 12.03—Amendments on Admission or Withdrawal of Partners. R. 1-3 at 5-7.

R. 1-3 at 8. On its face, the Merger was not an asset sale. But even if the Merger were somehow interpreted as a sale of "all or substantially all of the partnership asset," under Section 13.01, it does not constitute an actual "amendment" of that section of the Original Partnership Agreement.

Section 13.01 of the Original Partnership Agreement discusses the circumstances under which the Partnership would be dissolved. One of those circumstances is upon the "sale or other disposition" of all or substantially all of the Partnership assets. R. 1-3 at 8. Section 12.02(e), requires approval of all partners to amend Section 13.01. The apparent fulfillment of one of the conditions in Section 13.01 of a dissolution of the Partnership is not the equivalent of *amending* one of those conditions. [6]

## B. Plaintiff's Additional Bases for Invalidity of the Clause

Plaintiff also argues that the clause is not valid for the following reasons: (1) Plaintiff was not a party to the contract and did not freely negotiate the clause; (2) Plaintiff did not otherwise consent to Delaware as a district where its claims could be brought; and (3) the clause was the product of fraud, breaches of fiduciary duty and overreaching. R. 22 at 3. Defendants respond that the clause need not have been freely negotiated, was not a product of fraud, and is in fact fundamentally fair and reasonable. R. 25. They also argue that Plaintiff identifies no public interest which would overwhelmingly disfavor transfer. *Id.*

---

[6] Plaintiff also argues that the affidavits of Daniel McAvoy and Gil Seton, Jr. should be disregarded as hearsay. However, based on the Court's findings of validity of the forum selection clause, the Court need not reach the Plaintiff's arguments.

*1. Negotiation of the Clause*

Plaintiff cites multiple cases for the principle that parties without the opportunity to review, object, or sign an agreement containing a forum selection clause will not be bound by it. R. 22 at 2-9. Those cases are distinguishable on their face. Many involve forum selection clauses forced upon third parties who were not party to the agreement containing the clause. They do not involve situations such as here where a limited partner chose, in exchange for some benefit, to bind itself by written agreement to certain actions by the majority of limited partners. Quite simply, the plaintiff is not a third party to the Original or Revised Partnership Agreement but instead is a party to it.

Here, the Plaintiff agreed to be bound by the Original Partnership Agreement, which was governed by Tennessee law.[7] Plaintiff executed a limited

---

[7] The Original Partnership Agreement included a provision by which assignees of limited partnership interests agreed to be bound by the Agreement:

> 10.03 Admission of Substitute Limited Partners
>
> (a) Subject to the other provisions of this Article X, an assignee of the Interest of a Limited Partner (which shall be understood to include any purchaser, transferee, donee, or other recipient on any disposition of such interest . . . ) shall be deemed admitted as a Limited Partner . . . only upon the satisfactory completion of the following:
>
>     \*      \*      \*      \*      \*
>
> (iii) *the assignee shall have accepted and agreed to be bound by the terms and provisions of this Agreement . . . and such other documents or instruments as the General Partners may require.*

13

partnership agreement which included provisions vesting management authority of the partnership with the general partner and permitting certain actions based on the approval of a majority of limited partners. The March 26, 2012 amendment to the Original Partnership Agreement, which Plaintiff did not object to, corrected omitted language from the Original Partnership Agreement. R. 19-2 at 16-17. Section 7.01 of the Original Partnership Agreement, "Management Authority of the General Partners," was amended to provide:

> (a) Except to the extent that the consent of the Limited Partners is required by this Agreement, the Administrative General Partner shall have full, complete and exclusive discretion to manage and control the business of the Partnership for the purpose herein stated, shall make all decisions affecting the business of the Partnership to the best of its ability and use its best efforts to carry out the purpose of the Partnership. . . .

R. 19-2 at 16-17, Item 2. The Original Partnership Agreement also provided:

> (a) . . . The Administrative General Partner, on behalf of the Partnership, shall have the authority to perform all acts which the Partnership is authorized to perform, including, but not limited to the following:
>
> *       *       *       *       *
>
> (iv) refinance, sell or otherwise dispose of all or substantially all of the assets of the Partnership at any one time, provided, however, any such act shall require the approval of all General Partners and the consent of Limited Partners holding a majority of the Limited Partner interests, unless it is a sale or other disposition resulting from dissolution of the Partnership pursuant to Article III hereof. Dkt. No. 1, Exh. A, at § 7.01(a)(iv).

---

R. 1-3 at 2, § 10.03(a)(iii).

R. 1-2 at 5-6, § 7.01(a)(iv).

Plaintiff does not allege that it was mistaken about or unaware of the terms of the Original Partnership Agreement or the March 26, 2012 amendments at the times of execution. Even if, as Plaintiff argues, the Merger constituted a sale of "all or substantially all" of the partnership's assets on their face, the conditions for approval under the Original Partnership Agreement were fulfilled. According to the Original Partnership Agreement, sale of all or substantially all of the partnership assets required approval of a majority—not all—of the limited partners. R. 1-2 at 5-6.

If, as Defendants argue, the actions constituted a merger rather than an asset sale, the required approval was also obtained under state law through the TRULPA. A merger under the TRULPA requires approval by only a majority of the limited partners. *See* Tenn. Code Ann. § 61-2-211.[8]

It is undisputed that the sole general partner and the majority of the limited partners approved the Merger. At the time of the Merger, UMIC GP was the sole general partner and SPIF owned a majority of the outstanding limited partnership interests. R. 19-3 at 19, Exh. G. Both UMIC GP and SPIF approved the merger.[9]

---

[8] Plaintiff asserts that the Tennessee statute relied on by Defendants is inapplicable in part because it is dated in 2014, after the date of the merger. R. 22 at 11-12. Plaintiff does not show, however, that the requirement of limited partner approval under § 61-2-211 in July 2013 was greater than the more than 50 percent majority cited above.

[9] Plaintiff's complaint concedes that the Merger was approved by the sole general partner UMIC GP and SPIF, the holders of the majority of limited partnership interests. R. 1 at 12 ¶ 21.

Moreover, it is undisputed that Defendants also satisfied the remaining merger requirements under the TRULPA § 61-2-211(c), memorialized by the certificate of merger filed with the Tennessee Secretary of State on July 23, 2013. R. 19-5, Exh. C. Consequently, the Court concludes that Defendants' failure to obtain consent from all the limited partners does not invalidate the Merger or forum selection clause contained in the Revised Partnership Agreement following the Merger.

Caselaw in analogous situations supports this conclusion. In *Central States, Southeast & Southwest Areas Pension Fund v. O'Brien & Nye Cartage Co.,* No. 06-C-4988, 2007 WL 625430, at *1 (N.D. Ill. Feb. 22, 2007), the defendant corporation in an ERISA case complained that the forum selection clauses did not exist at the time the participation agreement was executed and claimed it was never given notice of its inclusion in the trust agreements. The court found that by entering into a presumably valid participation agreement, the defendant bound itself to the terms of the trust agreements. The trust agreement stated that the defendant would be bound by the trustee's actions, including subsequent amendments like the forum selection clause at issue there. Similarly, holders of the limited partnership interests in this case bound themselves to the Original Partnership Agreement which in turn binds them to subsequent amendments and actions properly taken by the general and majority limited partners.

Likewise, *Boilermakers Local 154 Retirement Fund v. Chevron Corp.,* 73 A.3d 934, 941 (Del. Ch. 2013), *judgment entered sub nom., Boilermakers Local 154 Retirement Fund & Key West Police & Fire Pension Fund v. Chevron Corp.,* 7220-

CS, 2013 WL 3810127 (Del. Ch. June 22, 2013) is analogous. *Boilermakers* involved a forum selection clause that was adopted by a board with authority to adopt bylaws. The plaintiff filed a lawsuit outside the forum noted in the clause. It opposed transfer on similar grounds to Plaintiff here—that they did not vote in advance of its adoption to approve the clause. The court held: "that plaintiffs did not vote on the bylaws at the time of their adoption is not relevant to the question of whether the bylaws are valid or contractually binding under Delaware law." *Id.* at 957-58. The court found that although the stockholders had not voted on the version of the clause, the clause was nonetheless valid and enforceable because the stockholders assented to the board's adoption of bylaws, part of the agreed contract when purchasing stock. *Id.* Similar to *Boilermakers* and *O'Brien*, although holders of a minority of the limited partnership interest in this case did not vote to put the forum selection clause in place, they are bound by the terms of the Original Partnership Agreement. They assented to the Original Partnership Agreement and the actions and amendments by certain parties described therein through their purchase or assignment of the limited partnership interests.

Finally, in *Goldweber v. Harmony Partners Ltd.*, 671 F. Supp. 2d 392, 394 (E.D.N.Y. 2009), the court found a forum selection clause valid where the general partners had the undisputed authority to amend the partnership agreement without the consent of limited partners. They amended the partnership to include a forum selection clause, and the court found the clause to be valid, noting that the

partners met their obligation to communicate the existence of the clause by sending plaintiff a copy of the amended partnership agreement. *Id.* at 396-97.

2. *Fraud*

Plaintiff argues that because the Merger is invalid, the entire Revised Partnership Agreement is void as a product of fraud, rendering the forum selection clause invalid. R. 22 at 2. Plaintiff claims that the merger and resulting Revised Partnership Agreement were part of Defendants' "scheme to defraud Plaintiff and the other minority limited partners of their partnership interest and allegations that these and other actions by defendants constituted a breach of the fiduciary duties owed plaintiff." R. 22 at 18. However, Plaintiff makes insufficient allegations of fraud concerning the addition of the forum selection clause itself.

"[G]eneral claims of fraud do not suffice to invalidate the forum selection clause." *Doe v. Cultural Care, Inc.*, No. 09-CV-6126, 2010 WL 3075711, at *4 (N.D. Ill. Aug. 3, 2010) (citing *Preferred Capital, Inc. v. Assocs. in Urology,* 453 F.3d 718, 722 (6th Cir. 2006)). Under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10. "[I]t is the inclusion of the forum selection clause that must be the result of fraud, not simply the defendants' decision to enter the entire contract." *Trio Video, LLC v. NTL Capital, LLC*, No. 07 C 2719, 2007 WL 2230036, at *3 (N.D. Ill. July 27, 2007) (citing *Bremen*, 407 U.S. at 12-13). Plaintiff has not alleged anything about the clause itself that indicates fraud occurred in its insertion

18

in the Revised Partnership Agreement. The Court need not and should not reach the Plaintiff's general allegations of fraud in order to decide the validity of the forum selection clause.

Along similar lines, the Seventh Circuit has noted the "absurdity" of asking a court to determine the validity of a contract prior to determining the validity of a forum selection clause in that contract, where a party makes insufficient allegations that the clause itself was procured by fraud. *See Muzumdar*, 438 F.3d at 762 (stating that "[t]he logical conclusion of the argument would be that the federal courts in Illinois would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all" and noting that "[a]n absurdity would arise if the courts in Illinois determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to [another state]—for what? A determination as to whether the contracts are void?"); *see also Macey & Aleman v. Simmons,* No. 10-CV-06646, 2011 WL 1456762, at *4 n.3 (N.D. Ill. Apr. 14, 2011) (citing *Muzumdar* for the same proposition and declining to rule on whether entire agreements were void before ruling on motion to dismiss for lack of personal jurisdiction).

In *SeeComm Network Servs. Corp. v. Colt Telecomm.,* No. C 04–1283 MEJ, 2004 WL 1960174, at *1 (N.D. Cal. Sept. 3, 2004), the plaintiff argued that an agreement containing a forum-selection clause was invalid as a whole because of fraud in the inducement, rendering the entire agreement and forum-selection clause

unenforceable. The court observed that holding the forum selection clause invalid because the contract as a whole is invalid due to unilateral mistake or fraudulent inducement would improperly require the Court to assess the merits of the case. It found use of such an analysis was "clearly backwards" as the question before the court was "the validity of the Forum–Selection Clause, not the validity of the contract as a whole." *Id.* at *4-5.

Other courts have also rejected forum selection arguments that embrace "the ultimate issue" and refused to "determine the validity of the entire contract merely to resolve a defendant's venue claim under § 1404(a)." *CoActiv Capital Partners, Inc. v. Feathers*, No. CIV A 08-5506, 2009 WL 1911673, at *4 (E.D. Pa. July 1, 2009). This Court similarly finds that determining the validity of the entire contract merely to resolve the venue claim "would be both circular and improvident." *Id.* It would be premature to determine the validity of the Defendants' actions—beginning with a "scheme" that Plaintiff alleges commenced in 2003—at this stage of the proceedings. Based on the facts presented, the forum selection clause on its face is valid and enforceable against Plaintiff.

## II. Additional Factors

Plaintiff's remaining arguments against a transfer to Delaware under Section 1404(a) incorrectly presume that the forum selection clause is invalid. Plaintiff argues that venue is not proper in Delaware because not all Defendants reside there, the events giving rise to the claim did not take place there, and Defendants

have not met their burden to show that Delaware is more convenient to the parties, witnesses or in the interests of justice.  R. 22 at 21-24.

In evaluating the convenience of the parties and witnesses in the context of section 1404(a), "a court ordinarily considers the plaintiff's choice of forum; the situs of material events; the relative ease of access to sources of proof; the convenience of the witnesses; and the convenience of the parties of litigating in the respective forums." *Bankers Life & Cas. Co. v. Polonczyk*, No. 10 C 2523, 2010 WL 3273663, at *1 (N.D. Ill. Aug. 16, 2010) (citing *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999)). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey,* 796 F.2d at 219 (citations omitted).

"In considering a motion to transfer venue, the presence of a forum selection clause is relevant both as a matter of convenience and as an interest of justice: it is a significant factor that figures centrally in the district court's calculus." *Methode Elec., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 908 (N.D. Ill. 2009) (citing *Stewart Org.,* 487 U.S. 22 at 29–30) (internal quotation marks omitted). The Court's transfer analysis remains "flexible and multifaceted," and a forum-selection clause—like any other relevant factor—"should receive neither dispositive consideration . . . nor no consideration," *Methode*, 639 F. Supp. 2d at 908 (quoting *Stewart Org.*, 487 U.S. at 31). Under these circumstances, however, there is "a strong presumption against transfer." *Macey & Aleman v. Simmons*, No. 10 C 6646,

2012 WL 6568234 (N.D. Ill. Dec. 13, 2012) (quoting *Aliano Bros.*, 437 F.3d at 613). The presumption against transfer can be overcome only "if there is inconvenience to some third party . . . or to the judicial system itself." *Id.* (quoting *Nw. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 378 (7th Cir. 1990)). Here, the presence of a valid forum selection clause, particularly in light of the potentially dispersed localities of limited partners, far outweighs the public and private interest factors highlighted by the Plaintiff.

Generally, a party's agreement to a forum selection clause amounts to a waiver of his "right to assert *his own* inconvenience as a reason to transfer a case." *Heller Fin.*, 883 F.3d at 1293 (emphasis added). Based on the Court's finding that the forum selection clause is valid and Plaintiff's status as a limited partner who is bound by the Original and Revised Partnership Agreements, Plaintiff's claims of inconvenience are not compelling. *See, e.g., Hellman v. Royal Carribean Int'l*, No. 04-C-4041, 2005 WL 1631135, at *4 (N.D. Ill. July 8, 2005) ("While it would no doubt be more convenient for [the plaintiff] to litigate this claim in the Northern District of Illinois, her inconvenience is not sufficient to satisfy the heavy burden of proof required to set aside an otherwise valid forum selection clause.") (internal citations omitted).

In light of the forum selection clause, the remaining factors of the convenience of Defendants, the convenience of the witnesses, and the interests of justice do not strongly favor Illinois over Delaware, if at all. According to Plaintiff, Defendants and their principal places of business (along with sources of proof and

some relevant documents) are located in California, which does not favor Illinois over Delaware. The convenience of Illinois over Delaware for some witnesses does not weigh heavily in favor of transfer. Delaware is easy to reach for any witness. The documents about the day-to-day operations of the local partnerships are located in Kentucky and Tennessee, but that difference does not favor Illinois. A trial in federal court in Delaware is likely to proceed on a similar schedule as in this Court. Finally, while Plaintiff's allegation that the injuries took place in Illinois weigh in its favor, it is insufficient to overcome the forum selection clause.

In any case, the selected forum is not "unreasonable or unjust," or so gravely difficult and inconvenient that Plaintiff will for all practical purposes be deprived of its day in court. Plaintiff has not satisfied the heavy burden of showing that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [it]s day in court." *Bremen,* 407 U.S. at 18; *see also RBC Mortg. Co. v. Couch*, 274 F. Supp. 2d 965, 970 (N.D. Ill. 2003). Plaintiff does not allege that it is unable to pursue the suit in Delaware. The forum selection clause mandating suits relating to the Agreement be brought in federal or state court in Delaware is neither unreasonable, unjust, or inconvenient.

## Conclusion

For the reasons above, Defendant's Motion to Transfer, R. 19, is granted.


ENTERED:

*Thomas M Durkin*
_____

23

Honorable Thomas M. Durkin
United States District Judge

Dated:  July 31, 2014